**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**REYNOLD BERTI, II,**

        **Plaintiff,**

-vs-                                                  Case No.  2:11-cv-478-FtM-DNF

**UBS FINANCIAL a foreign corporation,**
**UBS BANK USA, INC. a foreign**
**corporation, JOHN TOGGWEILER, an**
**individual,**

        **Defendants.**

_____

## ORDER

This cause is before the Court on the Defendants, UBS Financial Services, Inc.'s ("UBS Financial") and John Toggweiler's ("Toggweiler") Motion to Compel Arbitration and to Stay Case Pending Arbitration (Doc. 29) filed on December 8, 2012. The Plaintiff, Reynold Berti II filed a Memorandum of Law in Opposition (Doc. 34) on December 27, 2011, and UBS Financial and Toggweiler filed a Reply (Doc. 43) on January 6, 2012.  UBS Financial and Toggweiler filed Supplemental Authority (Docs. 45, 76) on January 23, 2012, and August 9, 2012.

On May 14, 2012, the Honorable John E. Steele, United States District Judge entered a Reference Order (Doc. 56) referring this case to this Court to conduct all proceedings pursuant to the Notice, Consent, and Reference of a Civil Action to a Magistrate Judge  (Doc. 55) signed by counsel for all of the parties.  The Court held an evidentiary hearing on August 10, 2012 on the issues raised

in this motion. Berti II filed a Supplemental Memorandum of Law in Opposition (Doc. 81) on September 24, 2012.

### I. Background

Berti II filed an Amended Complaint (Doc. 22) on November 17, 2011 alleging the following. On December 10, 1996, Reynold Berti ("Berti I"), the father of Berti II created a trust entitled "Reynold F. Berti II Trust ("Trust"). (Com.[1] ¶8). A copy of the Trust is attached to the Amended Complaint as Exhibit A. Berti II was the Trust's Settlor, Timothy A. Berti, (Berti I's son, and Berti II's brother ) was the trustee. (See, Exh. A, p. 1 to Com. and ¶8). The Trust was amended several times in succeeding years. (Com. ¶9) The Amendment or restatement at issue is the one entered into on April 21, 1998 and attached as Exhibit B to the Amended Complaint. The restatement is entitled Reynold F. Berti, II Trust. (Exh. B, p. 1 to Com.). The language on page one is as follows:

> REYNOLD F. BERTI, II of North Fort Myers, Lee County, State of Florida, hereinafter called the Settlor, and,
> REYNOLD F. BERTI, II or his successors, hereinafter call the Trustee.

(Exh. B. p. 1 to Com.). In contrast, the restatement is signed by "Reynold F. Berti, II, Settlor" in two places, and his signature is witnessed, and notarized as Settlor. Likewise, it is signed as "Reynold F. Berti, Trustee", and Berti I's signature is witnessed and notarized. (See, Exh. B, p. 17-18, to Com.). The Plaintiff alleges that there is a "fatal, patent ambiguity in that the first page of the document nominates Reynold II as the trustee at that time, while the last page is signed by Reynold Berti, the father, as trustee." (Com. ¶10). Berti II alleges that he was not aware of and did not have an understanding of the terms of the Trust. (Com. ¶12).

---

[1] "Com." refers to the Amended Complaint (Doc. 22).

Between March and May of 1998, Berti I approached the Defendant, John Toggweiler ("Toggweiler") who was an investment advisor at Defendant UBS Financial Services, Inc. ("UBS Financial") to open an account to fund the Trust. (Com. ¶13). Berti II claims that Berti I did not have the authority to open an account under the Trust. (Com. ¶13). On March 25, 1998, Berti I completed an Account Application. (Exh. C, p. 1 to Com.). Plaintiff asserts that Berti I was not the trustee of the Trust and had no authority to open the account. (Com. ¶13-14). On May 4, 1998, Berti I completed a Trust or ERISA Plan Trustee Certification indicating that he was the trustee of the Trust, which Berti II claims is patently false. (Exh. D, p. 1 to Com.). Berti II argues that a review of the Trust documents would have shown that Berti I was not the trustee. (Com. ¶14).

After the UBS Account was opened, Toggweiler at the direction of Berti I transferred $665,000.00 from another account held by Berti I, his wife Jeanette, and son Timothy into the UBS Account. (Com. ¶15). Berti II was unaware of the funds transfer, was unaware that he was entitled to income from the account, and was unaware that he had the power to invade the principal of the Trust. (Com. ¶15). Berti II was aware of the UBS Account but was unaware that this account related to the Trust. (Com. ¶16). Berti II alleges that Berti I opened this account as well as others to shield his income from taxes. (Com. ¶19). Toggweiler at the direction of Berti I transferred money out of the UBS Account without Berti II's authorization or approval. (Com. ¶20-21).

In December 2006, Timothy and Berti I conceived a business idea to develop a real estate project containing a fruit/vegetable stand ("Project"). (Com. ¶22). Timothy and Berti I approached UBS Bank and UBS Financial about financing this scheme. (Com. ¶22). UBS Bank agreed to extend a loan in the form of a line of credit for the development of the Project on the condition that the assets in the UBS Account set up by the Trust were used a collateral for the line of credit. (Com. ¶22). On

December 14, 2006, Timothy and Berti I executed their application for the line of credit. (Com. ¶23). The Application is attached to the Amended Complaint as Exhibit E. Berti I also entered into a Credit Line Guaranty Agreement on December 14, 2006, and Berti I signed the Notice to Guarantor as Trustee. (Exh. E, p.5 to Com.). Berti II asserts that a quick review of the Trust would have shown that Berti I was not the trustee, and had no authority to enter into these Agreements or to use the Trust assets as collateral for a loan. (Com. ¶23). Neither UBS Bank, UBS Financial, nor Toggweiler explained to Berti II the nature or the effect of the Guaranty Agreement. (Com. ¶24).

Timothy attempted to develop the Project and borrowed from UBS Bank under the Loan approximately $2,000,000.00. (Com. ¶25). The Project ultimately failed. (Com. ¶25). Berti I died on August 24, 2008 leaving Timothy as trustee of the Estate of Reynold Berti. (Com. ¶25). Through being involved in the administration of the Estate, Berti II became fully aware of the amount borrowed under the Loan and the nature and effect of the Guaranty Agreement. (Com. ¶25). After Berti I died, Timothy continued to have access to borrow against the Loan and to withdraw funds from the UBS Account. (Com. ¶ 26). After Berti I's death, Berti II learned he could be trustee for the Trust, and he learned of the ambiguity in the language of the trust. (Com. ¶27). Berti II also learned that UBS Financial had sold the Trust an annuity contract issued by Aetna Life Insurance and Annuity Company with Berti I as the annuitant. (Com. ¶28). By the terms of the annuity, it should not have been sold to an annuitant who was over 65 years of age, but Berti I was 85 years old at the time of purchase. (Com. ¶28). When Berti I died, the annuity paid the death benefit to the Trust but it was reduced due to Berti I's age. (Com. ¶28). Berti II confirmed his position as trustee of the Trust, and entered into an account agreement with UBS Financial to correct the problems created in the UBS Account. (Com. ¶29). Toggweiler mislead Berti II telling him that he was not entitled to information regarding the

UBS Account unless he signed the UBS Account documents presented to him, or he would not receive any money from the Trust and would "face removal from Reynold Berti's will and other testamentary instruments." (Com. ¶18). On December 16, 2008, Berti II executed an Account Application and Agreement for Trust and Estate Accounts to confirm his position as trustee of the Trust and the UBS Account. (Com. ¶30). A copy of the Account Application and Agreement for Trust and Estate Accounts is attached to the Amended Complaint as Exhibit F.

USB Bank and UBS Financial communicated with Berti II and Timothy that they were not inclined to renew the loan in 2009 because the market value of the securities pledged for the Loan had declined and because there had been no significant principal payments on the Loan. (Com. ¶32). UBS Bank and UBS Financial demanded repayment of the Loan. (Com. ¶32). In March and April 2009, Berti II and Timothy entered into negotiations with UBS Bank and UBS Financial regarding making significant principal payments under the Loan. (Com. ¶33). They agreed that all of the accounts held by the Berti family at UBS Financial would be liquidated and the assets held be used to pay down the Loan. (Com. ¶33). After $150,000.00 was withdrawn from the Trust Account, the balance in the Trust Account was approximately $1,300,000.00. (Com. ¶33). In May 2011, UBS liquidated approximately $1,000,000.00 in assets in the Trust Account and used these funds to payoff the Loan. (Com. ¶34).

Berti II brings the following causes of action. In Count I, Berti II brings a claim for Fraudulent Inducement as to the Arbitration Clause against Toggweiler and UBS Financial. In Count II, Berti II brings an action for Duress as to the Arbitration Clause against Toggweiler and UBS Financial. In Count III, Berti II brings an action for Recision of Arbitration Clause against Toggweiler and UBS Financial. In Count IV, Berti II brings an action for Rescission of Arbitration Clause Due to

Unconscionability against Toggweiler and UBS Financial. In Count V, Berti II brings an action for Section 10(B) of the Securities Exchange Act of 1934 and Rule 10b-5 against Toggweiler, UBS Financial, and UBS Bank. In Count VI, Berti II brings an action for Breach of Fiduciary Duty against Toggweiler, UBS Financial, and UBS Bank. In Count VII, Berti II brings an action for Conversion against Toggweiler, UBS Financial, and UBS Bank. In Count VIII, Berti II brings an action for Civil Theft - Fla. Stat. §772.11 against Toggweiler, UBS Financial, and UBS Bank. In Count IX, Berti II brings an action for Violation of Fla. Stat. §517.301 against Toggweiler, UBS Financial, and UBS Bank. In Count X, Berti II brings an action for Civil Rico Pursuant to Fla. Stat. §895.01 *et seq.* against Toggweiler, UBS Financial, and UBS Bank. In Count XI, Berti II brings an action for Violation of Federal Rico 18 U.S.C. §1962 against Toggweiler, Ubs Financial, and UBS Bank. In Count XII, Berti II brings an action for Accounting.

### II. Language of Account Application and Agreement for Trust and Estate Accounts

In the Account Application and Agreement for Trust and Estate Accounts, the following is the language concerning arbitration:

> This Agreement contains a predispute arbitration clause. By signing the Account Application the parties agree as follows:
> - All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed. . . .
>
> You agree, and by opening an account for you, UBS Financial Services, Inc. . . . agrees that any controversy, claim or issue in any controversy which may arise between you and UBS Financial Services Inc. . . . . that occurred prior, on or subsequent to the execution of this Agreement, including but not limited to, any controversy, claim or issue in any controversy concerning any account(s), transaction, dispute or the construction, performance or breach of this Agreement . . . shall be determined by arbitration. Any arbitration under this Agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act, and shall be conducted before an

>arbitration panel convened by the Financial Industry Regulator Authority (FINRA). . . . .The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court of competent jurisdiction.

(Exh. F, p.18 to Com.).

The Account Application and Agreement for Trust and Estate Accounts also provides that "This Agreement, including the Arbitration provisions in the next paragraph, its enforcement and the relationship between you and us will be governed by the laws of the State of New York, without giving effect to the choice of law or conflict of laws provisions thereof." (Exh. F. p. 18 to Com.).

### III. Trust Language

Berti II argues that his father, Berti I was never Trustee of the 1998 restatement, and therefore, he had no authority to collateralize the Credit Line Account Application and Agreement for Individuals and the Credit Line Guaranty Agreement documents ("Loan Agreements") by using the Trust assets. Berti II argues that if Berti I, as Trustee had no authority to sign the guaranty for the Loan Documents, then the Loan Agreements entered into by Berti I are forgeries, and any arbitration clause in those documents is unenforceable and the subsequent Account Application and Agreement for Trust and Estate Accounts was entered into only to cover up any wrong-doing on the part of UBS Financial and Toggweiler.

It is undisputed that Berti I signed the Guaranty for the Loan Agreements on behalf of the Trust. He signed as Trustee. The Guaranty for the Loan Agreements did not involve Berti II personally, but rather used the Trust as collateral for the loan. Berti II's main argument as to the unenforceability of the Arbitration Clause relates to the Reynold F. Berti Trust restatement dated April 21, 1998, which provides on the first page that Reynold F. Berti, II is the Trustee, whereas on

the signature page, Reynold F. Berti, II signed as Settlor and Reynold F. Berti (Berti I) signed as Trustee. Berti II asserts that Berti I did not have the authority to guaranty the Loan Agreements with Trust assets because he was not the trustee and could not bind the Trust. The listing of Berti II as Trustee appears to be a typographical error in light of the subsequent signatures and action of the parties.

It is uncontested that Berti I acted as Trustee of the Reynold F. Berti, II Trust from 1998 until his death. It is also uncontested that Bert II signed the Trust as Settler directly above Berti I's signature as Trustee. There are no allegations that the signatures on the Trust were not authentic. Although Berti II argues that there is a patent ambiguity as to the Trust, upon a review of the Trust it is not difficult to understand that when UBS Bank reviewed the Trust and saw that Berti I signed the Trust as Trustee and that Berti II signed the Trust as Settlor directly above Berti I's signature, that UBS Bank relied on the signatures to determine that Berti I was Trustee. "In Florida, '[i]t is well-established that an agent's authority may be inferred from acts, conduct and other circumstances.'" *Board of Trustees of City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Markets Inc.,* 622 F.3d 1335, 1343 (11th Cir. 2010). Berti I acted with the apparent authority of a Trustee for approximately 10 years. Although Berti II claims that he did not know the nature or extent of the Loan Agreements, he does not allege that he was unaware that Berti I was acting as Trustee for the Trust. The Court finds Berti II to be patently erroneous in his argument that UBS Bank should have known that Berti I lacked the authority to act as Trustee due to the language on the first page of the restatement of the Trust, because Berti II did sign that exact document showing that he was the Settlor and his father was the Trustee. If the intent was otherwise, at the time of signing, Berti II should have noticed that he was not listed as Trustee when he signed the Trust. Allowing Berti I to

act as Trustee for a 10 year period, and then using the apparent ambiguity on the first page to attempt to be relieved of the obligation of a loan is inappropriate. Therefore, the Court determines that Berti I acted as Trustee of the Reynold F. Berti, II Trust when he entered into the Guaranty for the Loan Agreements. The Court finds no forgery and that the Reynold F. Berti II Trust entered into in 1998 is not void.

Berti II argues that Berti I fraudulently misrepresented himself as Trustee with the authority to encumber the Trust. Berti I had the apparent authority to encumber the Trust as he had been acting as Trustee for over ten years without Berti II raising any objections. The Court does not find that the Trust or the actions of Berti I as Trustee rise to the level of invalidating the Trust *ab initio*.

Berti II raises the "shingle theory" to bolster his argument that UBS Financial and Toggweiler should be held to a higher standard and should have investigated into the Trust and the trustee. The "shingle theory" relates to "[t]he notion that a broker-dealer must be held to a higher standard of conduct because by engaging in the securities business ("hanging out a shingle"), the broker-dealer implicitly represents to the world that the conduct of all its employees will be fair and meet professional norms." *Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245, n. 12 (S.D. Fa. 2005) (internal quotation marks omitted). The Court does not find that a discrepancy, such as here, on the first page of the Trust with the signatures on the last pages of the Trust meets the standard of being unfair or unprofessional. Clearly Berti I and Berti II by signing together indicate that Berti I was to be the Trustee and Berti II was to be the Settlor. When the Loan Agreements were entered into, the guarantor was the Trust, not Berti I or Berti II individually. Berti II did not bring an action on behalf of the Trust, and has failed to show that UBS Financial or Toggweiler were unfair or unprofessional to him.

### IV. Choice of Law

First the Court must determine the choice of law. It is undisputed that the language of the Account Application and Agreement for Trust and Estate Accounts provides that "[t]his Agreement, including the Arbitration provisions in the next paragraph, its enforcement and the relationship between you and us will be governed by the laws of the State of New York, without giving effect to the choice of law or conflict of laws provisions thereof." (Exh. F. p. 18 to Com.). UBS Financial and Toggweiler argue that New York law governs the enforcement of the Arbitration Agreement. Whereas Berti II argues that New York law only applies to the substantive arbitration itself, and not to the threshold procedural issue as to the enforceability of the arbitration agreement.

Although the agreements provide that New York should govern the substance of the agreements and the enforcement of the agreements, courts have found that the choice of laws governs the substance of the agreement whereas "'[f]ederal law establishes the enforceability of arbitration agreements.'" *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, 2007 WL 601992, *6 (S.D. Fla. Feb. 21, 2007) (citing *Employers of Wassau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 248 U.S. 483 (1987)), and *Olsher Metals Corp. v. Olsher*, 2004 WL 5394012, *2 (11th Cir. Jan. 26, 2004). "This Court has recognized that even where the underlying agreement has a choice -of-law provision, federal law still governs the threshold question of arbitrability. *Regent Seven Seas Cruises, Inc.,* 2007 WL 601992 at *6. Therefore, the Court will apply federal law to determine if this action should be subject to arbitration.

### V. Arbitration

UBS Financial and Toggweiler are requesting that the Court refer this action to arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Section 2 of the Act provides, in part as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2. Section 2 is a declaration by Congress of the liberal federal policy favoring arbitration agreements. *Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076, *4 (M.D. Fla. 2007). Section 3 of the Act requires that upon a motion by a party, the court must stay an action if an action is brought which is referable to arbitration under a written agreement. 9 U.S.C. §3.

Congress mandated a federal policy which favors arbitration agreements. *Senti*, 2007 WL 1174076 at *4 (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Therefore, arbitration clauses are generally construed in favor of arbitration. *Id.* (citing, *Moses H. Cone Mem. Hospital v. Mercury Const. Corp*, 460 U.S. 1, 24 (1983) and *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984)). The issue of whether the parties agreed to arbitrate is decided by the court and not the arbitrator, unless the agreement clearly provides otherwise. *Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076 at 4. "Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Id.* at 5 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Therefore, the Court must look to Florida law to determine whether the parties entered into an enforceable arbitration agreement. *Id.* (citing *A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454, 1563 (D.C. Cir. 1995)). Under both Federal and Florida law, a court must consider three factors in ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to

arbitrate was waived. See, *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999) and *Florida Farm Bureau Insurance Companies v. Pulte Home Corporation*, 2005 WL 1345779, *3 (M.D. Fla. June 6, 2005) (citations omitted). As with Federal law, in Florida, all issues regarding the right to arbitrate under a contract should be resolved in favor of arbitration. *Zager Plumbing, Inc. v. JPI Nat. Const., Inc.* 785 So.2d 660, 662 (Fla. 3d DCA 2001).

### A. Duress

In the instant case, Berti II has not raised an issue as to whether an arbitrable issue exists or whether the right to arbitrate was waived. Rather, Berti II argues that there is no valid written agreement to arbitrate. Berti II claims that UBS Financial and Toggweiler fraudulently induced Berti II to enter into the arbitration agreement by claiming that Berti I did not have the authority to enter into the guaranty for the Loan Agreements. In this case, however, UBS Financial and Toggweiler are relying on the language in the Account Application and Agreement for Trust and Estate Accounts that was signed by Berti II after his father's death. Therefore, the Court does not find that UBS Financial and Toggweiler fraudulently induced Berti II to enter into an agreement to arbitrate regarding the original Loan Agreements.

Berti II argues that he entered into the Account Application and Agreement for Trust and Estate Accounts as a result of duress by UBS Financial and Toggweiler. Berti II claims that he had no alternative but to enter into these agreements. For the account to be transferred so that Berti II had control over it, Berti II had to enter into this agreement. Berti II claims that because UBS Financial and Toggweiler knew of their fraudulent and negligent acts with regard to the UBS Account and Loan, they forced Berti II to enter into the Account Application and Agreement for Trust.

The Court must refer to Florida law to determine whether an enforceable agreement to arbitrate exists. *Williams v. Eddie Acardi Motor Company*, 2008 WL 686222, *4 (M.D. Fla. Mar. 10, 2008) (citing *Senti*, 2007 WL 1174076 at *5). "'A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain.'" *Claire's Boutiques v. Locastro*, 85 So.3d 1192, 1201 (Fla. 4th DCA 2012) (citing *Barakat v. Broward Cnty. Hous. Auth.,* 771 So.2d 1193, 1195 (Fla. 4th DCA 2000)). The law will not presume that the parties intended to form an illegal or unenforceable contract. *Id.* (citations omitted). Duress is defined as "[a] condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *T.G. v. Depart. of Children and Families*, 9 So.3d 48 (Fla. 4th DCA 2009) (quoting *Herald v. Hardin*, 116 So. 863, 864 (Fla. 1928). "In order to prove duress, 'it must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side.'" *Id*. (citing *City of Miami v. Kory*, 394 So. 2d 494 (Fla. 3d DCA 1981)). Berti II claims that the UBS Account was in deep financial distress at the time the Account Application and Agreement for Trust and Estate Accounts was signed and UBS Financial and Toggweiler would not have allowed Berti II to close the UBS Account without entering into these agreements and/or Berti II was not permitted to negotiate to remove the arbitration clause from these agreements. Therefore, Berti II involuntarily entered into these agreements which contained arbitration clauses.

The Court does not find that Berti II has shown duress in entering into the Account Application and Agreement for Trust. The original account opened by Berti I was in the name of the Trust. After Berti I died, to transfer the funds, UBS Financial and Toggweiler allegedly had Berti II sign the

Account Application and Agreement for Trust. Berti II had a free choice to enter into this agreement or not, and has failed to show that there was any improper or coercive behavior on the part of UBS Financial or Toggweiler. Berti II had a reasonable opportunity to review both documents before signing. "In Florida, '[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions.'" *Id*. (quoting *Patricoff v. Home Team Pest Defense*, 2006 WL 890094 at *2 (M.D. Fla. Apr. 3, 2006) (quoting *Sabin v. Lowe's of Fla., Inc.* 404 So.2d 772, 773 (Fla. 5th DCA 1981)). There are no claims that Berti II did not know of the arbitration clause in the agreements, nor that he attempted to have this clause removed. *See*, *SA-PG Sun City Center, LLC v. Kennedy*, 79 So.3d 916, 920 (Fla. 2d DCA 2012) (No evidence that signing party asked about arbitration clause, or asked to have it deleted and was refused). UBS Financial and Toggweiler assert that these are the same forms used in every new account and all the forms include the same provisions. The language in the Account Application and Agreement for Trust and Estate Accounts is clear and unambiguous and the section is entitled "U. Arbitration" which is clear and obvious that this paragraph contains information regarding arbitration. The Court finds that Berti II was not under duress when he entered into the Account Application and Agreement for Trust.

### B. Mutuality of Obligation and Consideration

Berti II argues that the arbitration clauses in the Account Application and Agreement for Trust allows UBS Financial and Toggweiler to alter the Account Application and Agreement for Trust and Estate Accounts whenever they choose, therefore these agreements lack consideration and mutuality

of obligation. In the Account Application and Agreement for Trust and Estate Accounts, in Section S. entitled "Entire Agreement and Changes to the Agreement", the following language is set forth:

> Upon written notice to you, we may change our Agreement with you at any time and may cease to offer any or all services. Any such change becomes effective on the date of the notice unless the notice specifies a later date. However, you remain liable for any outstanding debts and/or charges to your Account. Your continued use of our products and Services under the new Agreement constitutes acceptance of any change. All other changes to the Agreement will become effective only if altered in writing and signed by us.

(Exh. E, p. 17 Section S. to Com.). To find that the agreement to arbitrate was illusory because UBS Financial and Toggweiler could alter the terms of the agreement would require a showing of both procedural and substantive unconscionability. *Vince v. Specialized Services, Inc.*, 2011 WL 4599824, *3 (M.D. Fla. Oct. 3, 2011) (citing *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010)). Berti II has not shown either in the context of entering into the Account Application and Agreement for Trust and Estate Accounts nor that the arbitration provision itself was unreasonable or unfair.

**C. Unconscionability**

Berti II argues that the arbitration clause in the Account Application and Agreement for Trust and Estate Accounts is void for both procedural and substantive unconscionability. Berti II reiterates his prior arguments as for procedural unconscionability. Procedural unconscionability relates to the manner in which the contract was made such as the parties relative bargaining power and a party's ability to understand the terms of the contract or the typeface of the arbitration language. *SA-PG Sun City Center, LLC v. Kennedy*, 79 So. 3d 916, 919 (Fla 2nd DCA 2012) (quoting *Orkin Exterminating Co. v. Petsch*, 872 So.2d 259, 265 (Fla. 2d DCA 2004). The Court has already determined these prior

arguments concerning duress and fraud, and will not address them again. The Court finds that based on the totality of the circumstances surrounding the formation of Account Application and Agreement for Trust and Estate Accounts, that Berti II was afforded a meaningful choice or reasonable opportunity to understand the terms of the Account Application and Agreement for Trust and Estates Accounts, and this choice is supported by substantial evidence. The Court determines that there is no procedural unconscionability. When a court determines that an agreement is not procedurally unconscionable, then it need not reach the issue of substantive unconscionability. *Id*. at 919. Therefore, the Court determines that the Account Application and Agreement for Trust and Estate Accounts is not unconscionable.

**IT IS HEREBY ORDERED:**

1) The UBS Financial's Motion to Compel Arbitration and to Stay Case Pending Arbitration (Doc. 29) is **GRANTED.**

2) Berti II and UBS Financial are directed to arbitrate this action and notify the Court when the arbitration is completed.

3) This action is stayed pending arbitration and the Court retains jurisdiction to enforce the arbitration award, if any.

4) The parties shall file a joint notice every ninety (90) days as to the status of the arbitration.

5) The Clerk be directed to administratively close this file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this <u>  1st  </u> day of <u>November</u>, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record